NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| DIVINA RODRIGUEZ, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 06-2874 (DRD) |
| | : | |
| v. | : | |
| | : | |
| SENORAL CORPORATION, INC. d/b/a | : | **O P I N I O N** |
| DIVINE PRINTING, INC., TELECARD, | : | |
| INC., ALAN SALONER, JOHN and/or | : | |
| JANE DOES 1-50 (names being fictitious | : | |
| and unknown), and ABC COMPANIES | : | |
| 1-50 (names being fictitious and unknown), | : | |
| | : | |
| Defendants. | : | |

---

PANITCH & RACHINSKY, LLC
Richard S. Panitch, Esq.
330 Milltown Road, Suite W-11
East Brunswick, New Jersey 08816

*Attorneys for Plaintiff Divina Rodriguez*


SEKAS & ASSOCIATES, L.L.C.
Michael L. Pescatore, Esq.
530 Sylvan Avenue
Englewood Cliffs, New Jersey 07632

*Attorneys for Defendant Senoral Corporation d/b/a Divine Printing, Inc., Telecard, Inc., and Alan Saloner*

**DEBEVOISE, Senior District Judge**

## I.  PROCEDURAL HISTORY

1

Plaintiff, Divina Rodriguez ("Plaintiff"), filed the complaint in this action on March 24, 2006 in the Superior Court of New Jersey (the "Complaint"). The Complaint alleges multiple counts in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"), including: (1) hostile work environment sexual harassment (First Count); (2) *quid pro quo* sexual harassment (Second Count); (3) unlawful retaliation (Third Count); and (4) aiding and abetting liability (Fourth Count).

In addition, the Complaint alleges: assault and battery (Fifth Count); intentional infliction of emotional distress (Sixth Count); breach of contract (Seventh Count); fraud (Eighth Count); negligent misrepresentation (Ninth Count); tortious interference with prospective economic advantage (Tenth Count); unjust enrichment (Eleventh Count); promissory estoppel (Twelfth Count); rescission and/or reformation of contract (Thirteenth Count); violation of shareholder's rights (Fourteenth Count); and request for appointment of a fiscal agent (Fifteenth Count).

On June 23, 2006, defendants Senoral Corporation d/b/a Divine Printing, Inc., Telecard, Inc., and Alan Saloner ("Defendants") filed a notice of removal pursuant to 28 U.S.C. § 1441 based on diversity of citizenship under 28 U.S.C. § 1332.

Upon Defendants' application for temporary restraints and injunctive relief, this court ordered: (1) Plaintiff to turn over Defendants' laptop computer that was in her possession; (2) that Plaintiff is enjoined from utilizing Defendants' laptop computer; (3) that Plaintiff cease using the trade name "Devine Graphics"; (4) that plaintiff disclose the identities of all employees and clients contacted by the Plaintiff or her business after Plaintiff departed from Defendants' business; (5) that Plaintiff cease contacting and/or otherwise doing business with employees and

client's of Defendants' company; and (6) that Plaintiff disgorge any information within her possession concerning Defendants' clients, employees, and business to the Defendants.

Defendants now move to transfer venue to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a). In response, Plaintiff cross moves for remand to the Superior Court of New Jersey based on a lack of complete diversity.

## II. BACKGROUND

### A. The Parties

In the Complaint Plaintiff alleges that she is a citizen of New Jersey. (Compl. ¶ 1). She alleges that she was formerly employed as a general manager with defendant Telecard, Inc. ("Telecard"). (Compl. ¶ 2). Plaintiff further contends that defendant Senoral Corporation, Inc. ("Senoral") d/b/a Divine Printing, Inc. ("Divine Printing") is a business licensed to do business in New Jersey and claims that the principal place of business of Divine Printing is 131 Liberty Street, Metuchen, New Jersey. (Compl. ¶ 3). She claims that defendant Alan Saloner ("Saloner") was a supervisor, Chief Executive Officer and/or owner of Telecard, Divine Printing and/or ABC Companies 1-50 ("ABC"). (Compl. ¶ 4). She alleges that all of the defendants were her employers as defined under the NJLAD and had supervisory authority over her. (Compl. ¶ 4-9).

Saloner claims that he resides in California and is a citizen of San Diego. (Saloner Aff. ¶ 2). He states that he is the President and CEO of Telecard. (Id.). He contends that: (1) Telecard is incorporated and headquartered in California; (2) California is Telecard's principal place of business; (3) Telecard's corporate records are maintained in California; (4) Telecard's policy,

administration, and operational decisions occur in California; and (5) Telecard maintains its key decision-making powers in California. (Id.)

Additionally, Saloner states that he is a minority shareholder in Senoral and that Senoral is a closely held California corporation doing business as Divine Printing. (Id. ¶ 3). He contends that: (1) Senoral is incorporated in and headquartered in California; (2) California is Senoral's principal place of business; (3) Senoral's corporate records are maintained in California; (4) Senoral's policy, administration, and operational decisions are initiated in California; and (5) Senoral maintains its key decision-making powers in California. (Id. ¶ 4).

**B. Plaintiff's Claims**

In the Complaint, Plaintiff alleges that on February 8, 2006 she was terminated from her employment and that "the true reason why she was terminated from her employment with the defendants was that she refused to 'perform' sexual favors for Saloner and/or that she complained about the hostile work environment created and perpetuated by the defendants." (Compl. ¶ 13). Plaintiff alleges, *inter alia*, that:

> [d]uring plaintiff's employment with the defendants, Saloner induced plaintiff to move across the country to New Jersey to run Divine promising her that she would obtain a 25% equity interest in the company. The defendant never delivered the promised stock shares to plaintiff and in fact, the plaintiff [sic] never intended to comply with his false representations to the plaintiff. The plaintiff [sic] made these false material inducements to plaintiff to try and impress her to gain an advantage in his efforts to seduce her and in order to convince her to operate his business in New Jersey with the prospect of a large ownership interest if she succeeded.

(Compl. ¶ 15). In addition, Plaintiff claims Saloner frequently made sexual advances toward her

4

despite the fact that she told him the conduct was offensive and unwelcome. (Compl. ¶ 32).

Plaintiff primarily seeks compensatory damages as a result of the alleged failure to deliver the promised equity interest as well as damages which resulted from the alleged sexual harassment and unlawful termination.

### III. DISCUSSION

#### A. Transfer of Venue

28 U.S.C. §1404(a) states: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The burden of establishing the need for transfer still rests with the movant." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Id.

Although there is no definitive list of factors to consider, courts evaluate both private and public interests. Id. Private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records. Id. (citations omitted).

Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in

deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id. at 879-880 (citations omitted).

"Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum."  Id. at 880.  Furthermore,

> [a]lthough the parties' agreement as to the most proper forum should not receive dispositive weight, it is entitled to substantial consideration.  Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue.  Where the forum selection clause is valid, which requires that there have been no "fraud, influence, or overweening bargaining power," the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum.

Id. (citations omitted).

### **Private Interests**

1. Plaintiff's Forum Preference

Plaintiff's forum preference, as stated in the Complaint and in her moving papers, is New Jersey.

2. Defendants' Forum Preference

The Defendants' forum preference, as argued in their moving papers, is the United States District Court for the Southern District of California.

3. Where the Claims Arose

Defendants claim that "[t]he vast majority of the alleged events which underlie Plaintiff's causes of action occurred in California."  (Defs.' Br. 4).  However, although Plaintiff's claims

6

concerning the alleged contract which would have given Plaintiff a 25% ownership interest in Divine Printing was entered into before her move to New Jersey, the breach apparently occurred in New Jersey. Additionally, Plaintiff alleges that her wrongful termination as well as numerous instances of sexual harassment took place in New Jersey. (Pl.'s Br. 5-6).

Defendants also claim that the shareholder's agreement[1] for Senoral and the employment agreement between Senoral and Plaintiff were signed by the Plaintiff, executed in California, and call for the application of California law. However, none of the claims in the Complaint allege a breach of the employment agreement, but rather allege sexual harassment and unlawful termination with regard to Plaintiff's employment. Therefore, any forum selection clause in the employment agreement is inapplicable.

    4. <u>Convenience of the Parties</u>

Defendants claim that Saloner will testify individually and in his capacities with the named business defendants in defense of Plaintiff's allegations. Defendants contend that because Saloner is personally responsible for the day-to-day operations of Telecard, the business would suffer significant detriment if he was forced to travel to New Jersey for trial. (Defs.' Br. 7).

Plaintiff argues that transfer of the case would create difficulties for her. First, Plaintiff represents that she does not have the resources to prosecute the case in California due to her termination by Defendants. (Pl.'s Br. 6). Second, Plaintiff states that she would have to retain and pay new counsel in California. (<u>Id.</u>) Third, she claims that because she would have to take

---

[1] Defendants have not presented a copy of the shareholder's agreement with their motion. Even if they had, this would not change the court's ruling on this motion.

depositions in both states, counsel in both states would be necessary. (Id. at 7).

     5. Convenience of Witnesses

In their brief, Defendants name three witnesses that they expect to testify. They argue that these witnesses reside in Southern California and would experience substantial hardship if called to testify in New Jersey. (Defs.' Br. 8). First, Defendants state that they plan to call Susan Villela ("Villela"), Plaintiff's mother, to testify. (Id.) Defendants explain that Villela is an employee of Telecard and is "intimately familiar with the facts underlying this lawsuit and her testimony will be essential in this matter." (Id.). Additionally, Defendants state that they "believe Ms. Villela has no available time off to spend traveling to New Jersey. . . . But even if she had allocable time, defendant Telecard would suffer significant economic detriment as a result of her absence because she is the sole liaison between Telecard and Telecard's largest client, a Spanish-speaking client." (Id.). Finally, Defendants argue that it would be more costly and inconvenient to fly Villela to New Jersey than it would be for her to appear in the Southern District of California, because that is where she lives. (Id. at 9).

Second, Defendants state that they plan on calling Alan Katz ("Katz"), the director and co-shareholder of Divine Printing, to testify. (Id.). Defendants argue that because Katz is the CEO of a lithographic company in San Diego, California, his absence would create losses to his business. (Id.). Additionally, Defendants contend that it would be more costly to fly Katz to New Jersey than for him to appear in California. (Id.).

Third, Defendants state that they plan on calling David Hyman ("Hyman"), the financial consultant to Senoral, to testify. (Id.). They claim that Hyman's testimony is determinative as to

several issue in the case and that it would be much more costly and inconvenient to fly Hyman to New Jersey to testify, as he lives in California.  (Id. at 10).

In response, Plaintiff states her own reasons why she believes New Jersey is the more convenient forum for potential witnesses.  (Pl.'s Br. 5).  Plaintiff claims that employees from Divine Printing, whose testimony will be relevant, all work in New Jersey.  In addition, Plaintiff states that she lives and works in New Jersey, and her mother, Villela, now resides in New Jersey.  Plaintiff further claims that Alex Ojeda ("Ojeda"), an ex-employee of Divine Printing who is the man Saloner accused of having a relationship with Plaintiff, lives in New York and works in New Jersey.  (Id.).  Finally, Plaintiff contends that she has family, friends, and associates in New Jersey that will testify to economic damages and emotional distress suffered by Plaintiff.  (Id.).

    6. Location of Books and Records

Defendants argue that "venue in the Southern District of California would facilitate the best access to evidence."  (Defs.' Br. 8).  They contend that all of Telecard's business records are kept in San Diego, it would be cumbersome and costly to transport Defendant's business records across the country, and there is a greater potential for loss or destruction of documents.  (Id.).

Plaintiff argues that "New Jersey poses no problems to ease of access to sources of proof as Divine Printing operates out of Middlesex County and the witnesses in this case primarily are based here in New Jersey."  (Pl.'s Br. 6).

## Public Interests

    1. The Enforceability of the Judgment

None of the parties have addressed this concern and the court does not foresee any difficulty in this regard.

    2. <u>Practical Considerations That Could Make the Trial Easy, Expeditious, or Inexpensive</u>

Defendants claim witness travel expenses and deposition expenses weigh in favor of transferring venue to California. (Defs.' Br. 13) Specifically, they argue that they do not foresee any material witnesses from New Jersey, other than Plaintiff. (<u>Id.</u>). In addition, they claim Plaintiff regularly visits her mother in California. (<u>Id.</u>). Finally, Defendants contend that if "the parties and deponents can efficiently coordinate the depositions, Plaintiff could travel to California on only one occasion to attend numerous depositions . . . On the other hand, if all of the potential deponents were forced to travel to New Jersey . . . the travel costs for multiple persons would . . . be much greater." (<u>Id.</u>).

Plaintiffs argue that the individuals that the Defendants anticipate calling as witnesses are partners or financial consultants, and that "the defendants will have no problems getting their cooperation to testify and certainly, depositions could be done by video conferencing without these individuals ever leaving California." (Pl.'s Br. 6).

    3. <u>Court Congestion</u>

None of the parties raise this as a factor that is or should be a concern in this case and the court does not foresee any problems.

    4. <u>Local Interest in Deciding Local Controversies</u>

Defendant claims that because the underlying facts and the alleged wrongful acts upon which the suit is based occurred in California, California has a greater interest in the litigation.

10

(Defs.' Br. 13). Plaintiff claims, however, that the sexual harassment and termination occurred in New Jersey. (Pl.'s Br. 7). Additionally, Plaintiff contends New Jersey has a public policy interest in protecting its residents from sexual harassment and claims that the business in which she is entitled to an ownership interest is in New Jersey. (Id.).

At least one court has held, and this court agrees that "[r]esolution of . . . employment discrimination and sexual harassment claims particularly would be most meaningful and salutary in the community in which these unlawful acts were allegedly perpetrated, in which the alleged perpetrator maintains a workforce and in which the alleged victim was employed and resides." Lamusta v. Lawson Mardon Wheaton, Inc., No. CIV. A. 99-3931, 2000 WL 274013, at *3 (E.D.Pa. March 10, 2000).

5. Familiarity of the Trial Judge with the Applicable State Law

The Complaint contains fifteen counts, each of which alleges violations of New Jersey law. Four of those counts allege violations of the NJLAD. Although "[f]ederal courts, of course, are often required to apply the law of states in which they do not sit and basic principles of contract law and misrepresentation do not vary widely among the states . . . [n]evertheless, '[t]he interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake.'" Id. (quoting Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 8 (D.D.C. 1996)). Furthermore, unlike other state statutes which address employment discrimination, "the NJLAD is not consistently interpreted and applied in a manner which parallels Title VII." Id. (citing Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 120 n.19 (3d Cir. 1999)).

In evaluating the above factors, the court finds that, although originally the Plaintiff may have been able to bring her action in the Southern District of California, she chose to bring it in the District of New Jersey. This choice should not be lightly disturbed. Jumara, 55 F.3d at 879. Furthermore, the court finds that Defendants have failed to meet their burden of establishing the need for transfer. Id. Therefore, Defendants' motion will be denied.

B. **Plaintiff's Cross Motion to Remand**

In conjunction with Plaintiff's opposition to Defendants' motion to transfer venue, Plaintiff has cross moved to remand this matter to New Jersey Superior Court where the action originated. In support of this motion, Plaintiff claims that because the principal place of business of Divine Printing is Middlesex County, New Jersey, there is a lack of complete diversity.

28 U.S.C. § 1332(c)(1) states: "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." In order to determine the principal place of business, courts in this circuit must "ascertain 'the headquarters of day-to-day corporate activity and management.'" Mennen Co. v. Atlantic Mut. Ins. Co., 147 F.3d 287, 291 (3d Cir. 1998) (quoting Kelly v. United States Steel Corp., 284 F.2d 850, 854 (3d Cir. 1960)).

There is no dispute that the named defendant is Senoral Corporation d/b/a Divine Printing, Inc. and that Senoral is incorporated in California. Under that organization, Senoral is doing business in New Jersey under the alternative name Divine Printing. Divine Printing is not a separate legal entity.

Defendants note that Senoral's headquarters is in California where the corporation

performs all of its banking activity. (Defs.' Opp'n Br. 9). Additionally, Defendants state that: (1) Senoral's employees in New Jersey do not possess any corporate decision-making authority; (2) 80% of all supplies necessary to do business in New Jersey is obtained through California; (3) all promotional and sales efforts originate in California; (4) sales contracts are negotiated in California; (4) 95% of Senoral's revenues is generated outside of New Jersey; and (5) the hiring and firing of all corporate personnel as well as the formulation of business operating policies and procedures is managed solely in California. (Id. at 9-10).

As these facts are undisputed by the Plaintiff, the court finds that "the headquarters of day-to-day corporate activity and management" of Senoral is in California. Therefore, the principal place of business of Senoral is California, and there is complete diversity. Thus, Plaintiff's motion will be denied.

### IV. **CONCLUSION**

For the reasons set forth above, Defendants' motion to transfer venue will be denied and Plaintiff's cross motion to remand will be denied. The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:      November 27, 2006